PETER W. HALL, Circuit Judge.
 

 In this case, we address the question of whether the order dealing with a debtor’s mortgage obligations in a Chapter 13 bankruptcy confirmation order is
 
 res judi-cata
 
 with respect to a subsequent challenge by the trustee to the validity of the mortgage. We conclude that it is.
 

 Trustee-appellant Andrea E. Celli (the “Trustee”) appeals from an order of the United States District Court for the Northern District of New York (Kahn,
 
 J.)
 
 that reverses a ruling of the Bankruptcy Court (Littlefield,
 
 B.J.)
 
 and finds in favor of appellee First National Bank of Northern New York (“FNB”). The district court concluded that a Chapter 13 bankruptcy confirmation order was
 
 res judicata
 
 with respect to the validity of certain mortgage liens listed by the debtor in his Chapter 13 plan and therefore precludes the debtor’s and the Trustee’s subsequent attempt to avoid these liens on his property. We affirm.
 

 I. BACKGROUND
 

 The facts of this case are drawn from the parties’ stipulations and bankruptcy court filings. In 1992 Kevin J. Layo (“Layo” or “Debtor”) purchased a residence in St. Lawrence County, New York (“the Property”). Over the next four years, Layo executed and delivered to
 
 *291
 
 FNB four mortgages on the Property. The first and third mortgages were satisfied and discharged, and only the second (“Mortgage 2”) and fourth (“Mortgage 4”) mortgages are at issue in this dispute. Mortgage 2, which Layo executed to secure the sum of $84,000 in February 1993, was recorded in the St. Lawrence County Clerk’s office. Mortgage 2 remains undischarged, and the parties have “ma[d]e no stipulation regarding the underlying debt and whether or not [it] has been satisfied.” Layo executed Mortgage 4 in April 1996, securing a $105,000 loan. It was recorded on May 6, 1996. The parties have stipulated that on January 29, 1999, FNB “inadvertently discharged” Mortgage 4.
 

 In May 1999, Layo filed a petition for relief under Chapter 13 of the United States Bankruptcy Code, 11 U.S.C. § 1301
 
 et seq.
 
 (“Chapter 13”). FNB subsequently filed a claim in the amount of $99,000 to which Layo consented, including it in his Chapter 13 plan:
 

 The claim of [FNB] in the amount of $99,000 is secured by a valid first mortgage against debtor’s real estate, which is debtor’s homestead [the Property], There are no arrears. Debtor will make regular monthly payments directly to First National Bank of Northern New York.
 
 [1]
 

 Schedule D of Layo’s Chapter 13 plan, which lists creditors holding secured claims in his assets, indicates that the $99,000 is secured by a mortgage recorded on February 10, 1993. Although Mortgage 2 was executed before February 10, 1993, and Mortgage 4 was not executed until sometime thereafter, at the time it is clear from the record that both Layo and FNB agreed that Layo owed FNB $99,000 and that the mortgage note was secured by a first mortgage interest in Layo’s homestead property. With the recommendation of the Trustee, the United States Bankruptcy Court for the Northern District of New York (Littlefield,
 
 B.J.)
 
 confirmed Layo’s Chapter 13 plan on October 7,1999 (the “Confirmation Order”).
 

 In early 2000, after Layo stopped making principal and interest payments on his debt, FNB moved to lift the automatic stay and foreclose on the Property. In response, in March 2001, Layo and the Trustee filed a complaint that sought (1) to avoid Mortgage 4 asserting that it had been discharged and was thus free and clear of the ostensibly satisfied lien; and (2) to receive a satisfaction and discharge of Mortgage 2, which they claimed had been paid in full with what appear to have been the proceeds of the April 1996 loan secured by Mortgage 4. In its answer, FNB admitted most of the factual allegations but raised as an affirmative defense that the bankruptcy court’s Chapter 13 confirmation order established FNB’s position as a secured creditor, and therefore, the doctrine of
 
 res judicata
 
 precluded further litigation on the issue. The bankruptcy court proceeded, through an adversary proceeding, to resolve the challenge with respect to Mortgages 2 and 4.
 

 In its decision, the bankruptcy court concluded that
 
 res judicata
 
 did not apply. It granted both of the Trustee’s requests. FNB appealed to the district court, which reversed the bankruptcy court, concluding that under the test set forth in
 
 Corbett v. MacDonald Moving Servs., Inc.,
 
 124 F.3d 82, 87-88 (2d Cir.1997), the Chapter 13
 
 *292
 
 confirmation order met the requirements for
 
 res judicata.
 
 The district court concluded that the Trustee’s causes of action seeking to void and set aside the mortgage liens were barred on that basis. This appeal followed.
 

 II. DISCUSSION
 

 A.
 
 Standard of Review
 

 On appeal from a district court review of a bankruptcy court decision, we make an “independent and plenary” review of the bankruptcy court decision, accepting its findings of fact unless clearly erroneous and reviewing its conclusions of law
 
 de novo. Bell v. Bell (In re Bell),
 
 225 F.3d 203, 209 (2d Cir.2000). We review the dismissal of a claim on
 
 res judicata
 
 grounds
 
 de novo. See Lawrence v. Wink (In re Lawrence),
 
 293 F.3d 615, 620 (2d Cir.2002).
 

 B.
 
 Res Judicata Under Corbett
 

 In
 
 Corbett,
 
 we set forth the test for
 
 res judicata
 
 in bankruptcy proceedings involving a plan of reorganization:
 

 To determine whether the doctrine of res judicata bars a subsequent action, we consider whether 1) the prior decision was a final judgment on the merits, 2) the litigants were the same parties, 3) the prior court was of competent jurisdiction, and 4) the causes of action were the same. In the bankruptcy context, we ask as well whether an independent judgment in a separate proceeding would impair, destroy, challenge, or invalidate the enforceability or effectiveness of the reorganization plan.
 

 Corbett,
 
 124 F.3d at 87-88 (internal quotation marks and citations omitted). In this case, there is no dispute that the second and third prongs of the
 
 Corbett
 
 analysis are satisfied. The litigants are the same and the case arrives before this Court on appeal from an appropriate United States District Court, which had jurisdiction to review the bankruptcy court decision. Our analysis, therefore, focuses on the first and fourth prongs of the
 
 Corbett
 
 test.
 

 1. Identical Causes of Action
 

 We turn to the fourth prong first. To satisfy the fourth prong of the
 
 Corbett
 
 test for
 
 res judicata,
 
 there must be identity of causes of action,
 
 id.
 
 at 89, which means that the second action must involve the same “claim” or “nucleus of operative fact” as the first,
 
 Interoceanica Corp. v. Sound Pilots, Inc.,
 
 107 F.3d 86, 90 (2d Cir.1997) (internal quotation marks omitted). The two court actions at issue here are (a) the confirmation proceedings for Layo’s Chapter 13 plan concluded in October 1999, and (b) the adversary proceeding challenging the validity of the mortgages commenced in March 2001. The relevant claim to be analyzed in connection with those two actions is the asserted invalidity of the $99,000 mortgage lien listed in the confirmed Chapter 13 plan. As the Fifth Circuit stated in
 
 In re Howe,
 
 913 F.2d 1138, 1146 n. 28 (5th Cir.1990), the “critical question for res judicata purposes is whether the party could or should have asserted the claim in the earlier proceeding.”
 

 The Trustee argues that there is no identity of causes of action because the facts supporting the claim that the mortgage lien was invalid were not known to the Trustee prior to confirmation of the Chapter 13 plan. As a result, argues the Trustee, she was unaware at the time of the confirmation proceedings that she should have challenged FNB’s mortgage interests. The Trustee’s argument does not carry the day. “As a general rule, newly discovered evidence does not preclude the application of
 
 res judicata.
 
 Exceptions to this rule exist when the evi
 
 *293
 
 dence was either fraudulently concealed or when it could not have been discovered with due diligence.”
 
 Saud v. Bank of New York,
 
 929 F.2d 916, 920 (2d Cir.1991) (internal citation omitted). As the district court properly noted, checking the county records is the most basic type of due diligence. Inspection would have uncovered the history of discharged and undischarged mortgage liens on the property. That is, the facts that form the basis for the Trustee’s challenge to the mortgages were available in the county clerk’s office for anyone to see. The Trustee had clear opportunities to object to the validity of the mortgage lien listed in the confirmed Chapter 13 plan — when FNB filed its claim in the amount of $99,000 and when Layo consented to and included that claim in his final Chapter 13 plan.
 

 We therefore agree with the district court that the Trustee had both a motive and opportunity to confirm the status of real estate liens affecting the debtor’s estate at or before the time that the plan was confirmed. The confirmation proceedings and the subsequent adversary proceedings to challenge the mortgages are thus considered identical under the fourth prong of our
 
 Corbett
 
 analysis.
 

 2. Final Judgment on the Merits
 

 The other question we must address is whether the order confirming the Chapter 13 plan was a final judgment on the merits. We hold that it was. Section 1327 of the Bankruptcy Code provides that: “The provisions of a confirmed plan bind the debtor and each creditor, ... whether or not such creditor has objected to, has accepted, or has rejected the plan.” 11 U.S.C. § 1327(a);
 
 see Gonzalez-Pina v. Rodriguez,
 
 407 F.3d 425, 430 (1st Cir.2005) (defining “finality” as determination by “a valid and binding final judgment or order”);
 
 In re Starling,
 
 251 B.R. 908, 910 (Bankr.S.D.Fla.2000) (“The binding effect of confirmation of the plan is essential in serving the objective of the confirmation process, which is to achieve finality.” (internal quotation marks omitted)). This result comports with the view of the leading bankruptcy treatise,
 
 Collier on Bankruptcy,
 
 which interprets the language of § 1327(a) as a bar to post-confirmation challenges of a confirmation order:
 

 Upon becoming final, the order confirming a chapter 13 plan represents a binding determination of the rights and liabilities of the parties as ordained by the plan. Absent timely appeal, the confirmed plan is
 
 res judicata
 
 and its terms are not subject to collateral attack.... The purpose of section 1327(a) is the same as the purpose served by the general doctrine of
 
 res judicata.
 
 There must be finality to a confirmation order so that all parties may rely upon it without concern that actions that they may later take could be upset because of a later change or revocation of the order.
 

 8 Collier on Bankruptcy ¶ 1327.02 (15th ed. rev.);
 
 see, e.g., Talbot v. Rickman (In re Talbot),
 
 124 F.3d 1201, 1209 (10th Cir. 1997) (quoting 8 Collier,
 
 supra,
 
 ¶ 1327.02);
 
 Carvalho v. Federal National Mortgage Association (In re Carvahlo),
 
 335 F.3d 45, 49 (1st Cir.2003) (“[Cjonfirmation of a Chapter 13 plan customarily is res judicata as to all issues that were or could have been decided during the confirmation process.”). Indeed, the confirmed plan itself stated that:
 

 Once confirmed, the plan, pursuant to the provisions of 11 U.S.C. § 1327, shall be binding upon all parties and questions that could have been raised with respect to the plan shall be
 
 res judicata.
 

 Relying on
 
 Stoll v. Gottlieb,
 
 305 U.S. 165, 170-71, 59 S.Ct. 134, 83 L.Ed. 104 (1938), and
 
 Sure-Snap Corporation v.
 
 
 *294
 

 State Street Bank and Trust Company,
 
 948 F.2d 869 (2d Cir.1991), the district court noted that “[i]t is well-settled that a bankruptcy court’s order confirming a plan of reorganization constitutes a final judgment with preclusive effect under
 
 res judicata.”
 
 Acknowledging that “the confirmation of a Chapter 11 plan operates to discharge the debtor of debts incurred pri- or to confirmation,” and is thus a final judgment on the merits, the Trustee nevertheless attempts to distinguish confirmed Chapter 11 plans from confirmed Chapter 13 plans by arguing that confirmation of a Chapter 13 plan is not a final judgment because “a Chapter 13 debtor is not entitled to a discharge until all payments under the plan have been made.” We are unpersuaded. Although discharge is not complete until all payments have been made, the confirmed plan lays out all rights and duties of the parties. Furthermore, the language of § 1327(a) governing confirmed Chapter 13 plans is substantially similar to the operative language of Chapter 11.
 
 See
 
 11 U.S.C. § 1141(a) (“[T]he provisions of a confirmed plan bind the debtor ... and any creditor, ... whether or not the claim or interest of such creditor ... is impaired under the plan and whether or not such creditor ... has accepted the plan.”). We conclude, as did the district court, that just like a Chapter 11 confirmation order, an order confirming a Chapter 13 bankruptcy plan does constitute a final judgment on the merits.
 

 In a similar vein, the Trustee further contends that the validity of a lien can only be determined with finality through an adversary proceeding pursuant to Federal Rule of Bankruptcy Procedure 7004. Fed. R. Bankr.P. 7001(2) (noting that “the validity, priority, or extent of a lien or other interest in property” shall be determined in an adversary proceeding). The Trustee argues that the Fourth Circuit has adopted her position, concluding that “if an issue must be raised through an adversary proceeding it is not part of the confirmation process and, unless it is actually litigated, confirmation will not have a preclu-sive effect.”
 
 Cen-Pen Corp. v. Hanson,
 
 58 F.3d 89, 93 (4th Cir.1995) (quotation marks, citation, and alteration omitted). We acknowledge that challenges to the validity of a lien must be brought through an adversary proceeding. Where, at the outset, there is no dispute as to the basis of a lien, however, given the policy embodied in § 1327(a) that confirmation of a plan “bind the debtor and each creditor,” it does not follow that a non-objecting creditor has a right to bring an adversary proceeding whenever he gets around to doing so. To allow that practice would fly in the face of Congress’ expressed intention that confirmation give debtors and creditors finality with respect to satisfaction of outstanding debt.
 

 Moreover, we do not think the Fourth Circuit’s holding in
 
 Cem-Pen
 
 is to the contrary insofar as this case is concerned. In
 
 Cen-Pen,
 
 there was a dispute arising out of an earlier settlement agreement between Cen-Pen, the bank holding the secured mortgage, and the debtors, as to whether a mortgage lien held by Cen-Pen was secured or unsecured.
 
 Id.
 
 at 91. Rather than resolve the dispute through an adversary proceeding, the debtors attempted to classify the lien as unsecured by listing it as such in their Chapter 13 plan.
 
 Id.
 
 The plan was confirmed after no creditors, including Cen-Pen, raised any objections, and the debtors received a discharge.
 
 [2]
 

 Id.
 
 at 91-92. Cen-Pen subse
 
 *295
 
 quently filed a complaint in the bankruptcy court asserting the validity of its secured lien on the debtors’ property.
 
 Id.
 
 at 92. In response, the debtors sought to bar CenPen’s efforts on
 
 res judicata
 
 grounds, arguing that confirmation of their plan, which listed the debt as unsecured, invalidated the lien.
 
 Id.
 
 The Fourth Circuit rejected this argument on the grounds that rather than resolving the disputed lien classification in an adversary proceeding, the debtors tried to assert their position through the confirmation process. The court held that “[ujnless the debtor takes appropriate affirmative action to avoid a security interest in property ... that property will remain subject to the security interest following confirmation. The simple expedient of passing their residence through the bankruptcy estate could not vest in the [debtors] a greater interest in the [property] than they enjoyed prior to filing their Chapter 13 petition.”
 
 Id.
 
 at 92-93 (citation omitted). Because the debtors, who disputed the validity of Cen-Pen’s secured position from the outset, did not take the appropriate affirmative action to challenge the bank’s position, the Fourth Circuit held that they could not assert
 
 res judicata
 
 to bar Cen-Pen’s efforts to establish the validity of its lien.
 
 Id.
 
 at 93.
 

 We do not view
 
 Cen-Pen
 
 as establishing a general rule that creditors whose liens are not in dispute at the time of confirmation have a right to bring an adversary proceeding post-confirmation to challenge the lien, and the rationale of
 
 Cen-Pen,
 
 limited to its facts, does not apply in this instance. This case does not involve a matter that was in dispute at the time the bankruptcy commenced, nor does it involve a creditor objecting to the discharge of a mortgage lien in a confirmed plan that had been in dispute prior to confirmation and should have been challenged in an adversary proceeding. Instead, it involves an after-the-fact attack on a lien by a debtor who did not dispute the lien despite having notice and the opportunity to do so. In fact, the debtor included the lien in his own plan, which the Trustee recommended for confirmation, and there was thus no occasion for the creditor to request a pre-confirmation adversary proceeding.
 

 The Trustee also cites to
 
 Banks v. Sallie Mae Servicing Cory). (In re Banks),
 
 299 F.3d 296 (4th Cir.2002), apparently for the proposition that because certain loans cannot be discharged by a Chapter 13 confirmation in some cases, Chapter 13 confirmations are not absolutely preclusive and therefore may not constitute final judgments. The problem with this argument is that
 
 Banks
 
 involved educational loans which are presumptively nondischargeable, and by statute may be discharged in bankruptcy only on a finding of “undue hardship” at an adversary proceeding.
 
 See
 
 11 U.S.C. § 523(a)(8);
 
 see also In re Hanson,
 
 397 F.3d 482, 484 (7th Cir.2005). For policy reasons that we need not address today, Congress thought it prudent to impose a set of strictures on educational loans different from those on other types of loans and by statute excepted educational loans from the general discharge provisions of the Code. Because this Chapter 13 case does not involve an educational loan, we find educational loan cases to be of little guidance on the issue of finality.
 

 CONCLUSION
 

 In summary, we hold that the Chapter 13 bankruptcy confirmation order is
 
 res judicata
 
 with respect to the debtor’s
 
 *296
 
 and the Trustee’s post-confirmation attempt to avoid a confirmed, recorded lien on the debtor’s property where the lien was claimed by FNB at the outset of the bankruptcy proceedings and included by the debtor in his plan. Accordingly, we affirm the judgment of the District Court.
 

 [1]
 

 . The district court refers to Layo and the Trustee’s belief that "the money received in connection with mortgage 4 was [meant to be] used to pay off mortgage 2 such that mortgage 2 should have been discharged.” Despite this purported belief, it is clear that whichever mortgage Layo intended to acknowledge, he agreed in his Chapter 13 plan that FNB had a secured interest in his homestead in the amount of $99,000.
 

 [2]
 

 . Cen-Pen asserts that it did submit a claim, but the bankruptcy court has no record of ever receiving it.
 
 Cen-Pen,
 
 58 F.3d at 91 n. 1. Further, apparently as a result of its own
 
 *295
 
 negligence, Cen-Pen never objected to its inclusion in the plan as an unsecured creditor.
 
 Id.
 
 at 95 (Heaney, dissenting).