734

In re Antonieo D. CRUM and Gleudes C. Crum, Debtors.

Frank M. Pees, Chapter 13 Trustee, Plaintiff

v.

CitiMortgage, Inc., Defendant.

Bankruptcy No. 09–64460.
Adversary No. 11–2146.

United States Bankruptcy Court, S.D. Ohio, Eastern Division at Columbus.

Sept. 24, 2012.

John F. Cannizzaro, Marysville, OH, for Frank M. Pees.

Adam M. Schwartz, Havens Limited, Columbus, OH, for CitiMortgage, Inc.

Frank M. Pees, Chapter 13 Trustee.

Jeffrey P. Norman, Houston, TX, Chapter 13 Trustee.

### MEMORANDUM OPINION AND ORDER ON CROSS–MOTIONS FOR SUMMARY JUDGMENT

JOHN E. HOFFMAN, Bankruptcy Judge.

According to the parties, this adversary proceeding presents the following question: does surrender of property by way of a confirmed Chapter 13 plan remove that property from the bankruptcy estate? The defendant, CitiMortgage, Inc. ("CitiMortgage"), says yes in its motion for summary judgment ("CitiMortgage Motion") (Adv. Doc. 11)[1]. The plaintiff,

---

**1.** References to documents filed in the Debt- ors' underlying bankruptcy case will be desig-

Frank M. Pees, Chapter 13 trustee ("Trustee"),[2] answers no in his cross-motion for summary judgment ("Trustee's Motion") (Adv. Doc. 12).[3] If the property remains property of the estate, even though surrendered by way of a plan provision, then the Trustee intends to commence an adversary proceeding to avoid CitiMortgage's lien on the property for the benefit of the estate. The Court finds that it need not resolve the issue of whether the property in question remained in the Debtors' estate following confirmation, because the ultimate relief that would be required here—modification of the Debtors' plan to alter the treatment of CitiMortgage's secured claim—is not available in any event.

## I. Jurisdiction

The Court has jurisdiction to hear and determine this adversary proceeding pursuant to 28 U.S.C. §§ 157 and 1334 and the general order of reference entered in this district. This is a core proceeding. *See* 28 U.S.C. § 157(b)(2).

## II. Procedural and Factual Background

The parties are in agreement as to the facts that give rise to this dispute. The procedural history of the matter is drawn from the documents on file in the Debtors' underlying bankruptcy case (Case No. 09–64460), as well as those of record in this adversary proceeding.

Antonieo and Gleudes Crum ("Debtors"), husband and wife, became the owners of property located at 32185 Cobb–Harriman Road, Richwood, Ohio 43344 ("Property") by way of a survivorship deed executed March 7, 2003 and recorded at the Recorder's Office of Union County, Ohio on March 20, 2003. (Adv. Doc. 1, Ex. A, Part A.) Also on March 7, 2003, Antonieo Crum executed a note ("Note") in favor of ABN AMRO Mortgage Group, Inc., in the amount of $124,053.00. *Id.* at Part B. That same day, Antonieo Crum executed a mortgage ("Mortgage") to secure the note. *Id.* at Part C. Gleudes Crum initialed each page of the Mortgage and signed the Mortgage as well. *Id.* A notary public certified that both Antonieo and Gleudes Crum personally appeared before him, signed the Mortgage, and acknowledged their signatures. *Id.* The first page of the Mortgage states as follows:

THIS MORTGAGE ("Security Instrument") is given on MARCH 7, 2003. The Mortgagor is
ANTONIEO CRUM, *married and Gleudes C. Crum his wife signing to release dower*

where current mailing address is 836 COLLINS 8
MARYSVILLE, OH 43040

("Borrower").

As shown below, neither the signatures at the end of the Mortgage, nor the certificate of acknowledgment, contained any limiting language regarding release of dower.

nated as "Doc. ___" and references to documents filed in this adversary proceeding will be designated as "Adv. Doc. ___."

2. Six months after this adversary proceeding was filed, the administration of the Debtors' case was transferred to Chapter 13 trustee Jeffrey P. Norman. There has been no mo-

tion to substitute Mr. Norman as the real party in interest in this adversary proceeding.

3. The parties responded to each others' papers: Trustee's response (Doc. 13); CitiMortgage's response (Doc. 14).

*Id.*

On December 11, 2009, the Crums filed a Chapter 13 bankruptcy petition and accompanying schedules of assets and liabilities. (Doc. 1.) Their Schedule A (Real Property) lists the Property as being owned jointly, with a current value of $105,000, encumbered by a lien giving rise to a secured claim in the amount of $113,960. In lieu of a third-party appraisal, the Debtors filed a copy of the real estate tax duplicate from the Union County, Ohio auditor's office, reflecting a value of $105,290.[4] (Doc. 10.) The accompanying Notice of Filing of Tax Duplicate in Lieu of Real Estate Appraisal states that "Mr. and Mrs. Crum are surrendering the residential real estate located at 32185 Cobb–Harriman Road, Richwood, Ohio 43344." *Id.* No exemption was claimed for the Property on Schedule C (Property Claimed as Exempt).[5] Schedule D (Creditors Holding Secured Claims) lists Citi-Mortgage as holding a first mortgage on the Property in the amount of $113,960. The Crums' Chapter 13 plan, filed with the petition ("Plan") (Doc. 2), provides that no payments will be made, either by conduit through the Trustee's office or directly by the Debtors, on the obligation secured by the Mortgage. Instead, the Debtors, in section B(4) of the Plan, provide for surrender of the Property to CitiMortgage,

---

**4.** LBR 3015–3(e)(3) provides that if real property is to be surrendered under a Chapter 13 plan, an auditor's valuation is an acceptable appraisal.

**5.** Because the Debtors' street address on their petition is different than the address of the Property, the Court presumes that the Debtors were not residing in the residence located on the Property at the time of the filing and thus were not entitled to claim a homestead exemption in the Property.

with any resulting deficiency balance to be paid as an unsecured claim:

B(4). Property to be Surrendered.

Debtor will surrender the following real property and any resulting deficiency balance shall be treated as a Class 5 general unsecured claim:

| Creditor | Property Description | Estimated Deficiency Amount |
|---|---|---|
| CitiMortgage | 32185 Cobb-Harriman Rd Richwood OH | $20,277.00 |

Section G(4) of the Plan provides that upon confirmation of the plan, property of the estate does not vest in the Debtors, but remains property of the estate:

G(4). Vesting.

Mark one:

☐ Confirmation of the Plan vests all property of the estate in Debtor free and clear of any claim or interest of any creditor provided for by the Plan pursuant to § 1327(b) and (c).

or

☒ Property of the estate shall not vest in Debtor upon confirmation but shall remain property of the estate until the case is dismissed, converted, or a discharge is issued, whichever occurs first.

On January 20, 2010, CitiMortgage filed a proof of claim asserting a secured claim in the amount of $122,386.91. (Claims Register, Claim 5.) Copies of the Note and Mortgage were attached to CitiMortgage's proof of claim. No objection to the proof of claim has been filed.

CitiMortgage did not object to confirmation of the Plan. The Trustee filed an objection to confirmation, noting that CitiMortgage's deficiency claim, according to his calculation, was $17,096.91 rather than the $20,277 listed in the Plan. (Doc. 20.) The basis of that calculation is unknown and was not set forth in the Trustee's objection. The Trustee's objection was subsequently withdrawn (Doc. 27), and the Plan was confirmed by order entered May 25, 2010 (Doc. 29). The confirmation order states, in part, that "the Court finds that the Plan meets the requirements of 11 U.S.C. § 1325." *Id.* at 1.

A little more than a month following confirmation, CitiMortgage filed a motion for relief from stay in order to proceed with a state court foreclosure action ("Stay Relief Motion") (Doc. 33). The Stay Relief Motion was accompanied by copies of the Note and Mortgage. The Debtors responded to the Stay Relief Motion by stating:

The intent of the Chapter 13 plan is that the mortgage lien creditor shall be entitled to retake possession of the real estate and either retain the real estate in full satisfaction of the debt or liquidate it in a commercially reasonable manner. Further, in the event the creditor liquidates the collateral, the creditor shall only retain an unsecured claim in the Chapter 13 estate. The Debtors object as the Motion for Relief from Stay seeks authority to obtain a judgment *in personam* against the Debtors. The motion seeks general relief from the automatic stay in violation and in contravention of the Chapter 13 Plan and 11 U.S.C. § 362. Debtors do not waive the benefits of their Bankruptcy Code protections.

Doc. 37 at 1.

An agreed order resolving the Stay Relief Motion was entered on August 4, 2010 (Doc. 41), granting CitiMortgage relief

from stay for the limited purpose of proceeding *in rem* only to foreclose on the Property, and providing that no *in personam* actions could be taken against the Debtors. The agreed order also provided that CitiMortgage was "permitted to file a deficiency claim post sale pursuant to the terms of the confirmed Chapter 13 plan." *Id.* at 2.

On September 29, 2010, CitiMortgage filed a complaint in foreclosure in the Court of Common Pleas of Union County, Ohio ("Foreclosure Complaint") (Adv. Doc. 1, Ex. C). Count Three of the Foreclosure Complaint states that "the title deed was prepared in the names of Antonieo Crum and Gleudes C. Crum. Although the parties intended to mortgage their interest, and although Antonieo Crum and Gleudes C. Crum properly signed the mortgage, the subject mortgage was mistakenly recorded with Gleudes C. Crum signing to release her dower interest." *Id.* at 3. Among other relief, the Foreclosure Complaint sought a declaratory judgment "declaring that the parties intended that Gleudes C. Crum was to execute Plaintiff's mortgage and that the mortgage was to encumber the entire interest in the property[.]" *Id.*

Thus alerted to the possibility that the Mortgage may not encumber Gleudes Crum's interest in the Property, the Debtors filed an answer in the foreclosure proceeding, alleging that CitiMortgage failed to join an indispensable party, namely the Trustee. The Debtors also filed a motion to dismiss the foreclosure action on that basis. On March 28, 2011, the Trustee filed a motion to intervene in the foreclosure action. CitiMortgage responded by

alleging that the Trustee's interest, as well as the bankruptcy estate's interest in the Property, was terminated by the order confirming the Plan. Eventually, pursuant to an agreement between the parties, the Property was sold, and the proceeds of the sale are being held by the clerk of the state court pending the outcome of this adversary proceeding.

The complaint filed by the Trustee in this adversary proceeding ("Complaint") (Adv. Doc. 1) alleges that the Trustee first became aware that the Mortgage may not encumber the entire interest in the Property on November 1, 2010, after the Debtors brought CitiMortgage's foreclosure papers to counsel's office.[6] *Id.* at 3. The Complaint states that the Trustee was never asked to, nor did the Trustee ever abandon, his interest in the Property and notes that the Plan itself provides that property of the estate shall not vest in the Debtors upon confirmation but shall remain property of the estate until the case is dismissed, converted, or a discharge is issued, whichever occurs first. Compl. at 4. The Complaint further alleges that there is no court order removing the Property from the bankruptcy estate, and that "absent such Order, the real property remains property of the estate despite the Creditor being granted relief from stay to pursue [its] state court remedies and despite the Debtors' election under 11 U.S.C. § 1325(a)(5) to surrender their interests to the claimholder." *Id.* The Complaint seeks a declaration that the Trustee retains an interest in the Property and may pursue such interest for the benefit of the Chapter 13 estate. *Id.* at 5. Although it is

---

**6.** On December 14, 2010, counsel for the Debtors filed an application to be retained as special counsel for the Trustee in order to prosecute the adversary proceeding to determine the validity of the Mortgage and to represent the interests of the Trustee in the fore-

closure action. (Doc. 48.) There were no objections to the application, and the Court entered an order approving Debtors' counsel's retention as special counsel for the Trustee on February 3, 2011 (Doc. 52).

unstated in the papers filed in this adversary proceeding, the Trustee states in his application to employ counsel (Doc. 48) that he intends to initiate an adversary proceeding to avoid the mortgage as to Mrs. Crum's unencumbered one-half interest in the Property and recover the asset for the benefit of the estate. *Id.* at 2.

### III. Legal Analysis

#### A. Summary Judgment Standard

Under Rule 56 of the Federal Rules of Civil Procedure ("Civil Rule(s)"), made applicable in this adversary proceeding by Rule 7056 of the Federal Rules of Bankruptcy Procedure, a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.Civ.P. 56(a). "On a motion for summary judgment, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts." *Ricci v. DeStefano,* 557 U.S. 557, 129 S.Ct. 2658, 2677, 174 L.Ed.2d 490 (2009) (internal quotation marks omitted). A dispute is genuine only if it is "based on evidence upon which a reasonable [finder of fact] could return [a judgment] in favor of the non-moving party." *Gallagher v. C.H. Robinson Worldwide, Inc.,* 567 F.3d 263, 270 (6th Cir.2009). And a "factual dispute concerns a 'material' fact only if its resolution might affect the outcome of the suit under the governing substantive law." *Id.* "The standard of review for cross-motions for summary judgment does not differ from the standard applied when a motion is filed by only one party to the litigation." *Ferro Corp. v. Cookson Group, PLC,* 585 F.3d 946, 949 (6th Cir.2009). Here, the parties agree that there is no factual dispute and that the issues raised in this adversary proceeding may be determined as a matter of law.

#### B. Relevant Statutory and Plan Provisions

There are a number of Bankruptcy Code and Plan provisions implicated in this dispute: §§ 541 and 1306, which specify the property that is included in a Chapter 13 debtor's bankruptcy estate; § 1325(a)(5) which provides for surrender of property to a secured creditor as one of three ways in which a debtor may satisfy a secured claim under a Chapter 13 plan; section B(4) of the Plan, which provides for surrender of the Property; § 554, which provides for abandonment of property of the estate; § 1302, which enumerates the duties of a Chapter 13 trustee; § 1329, which sets forth the circumstances under which a debtor may modify a plan post-confirmation; § 1327(a), which makes the provisions of a confirmed plan binding on the debtor and each creditor; § 1327(b), which provides that upon confirmation, unless otherwise stated in a Chapter 13 debtor's plan, all property of the estate vests in the debtor; and Plan section G(4), which provides that the property of the estate of each of the Debtors does not vest in the Debtors but instead remains property of the estate. Despite the wide range of statutes and Plan provisions discussed by the parties with regard to the issue of whether the Property remained property of the estate following confirmation of the Plan and the granting of relief from stay, the resolution of the matter does not hinge on that question, but is instead resolved by application of §§ 1327 and 1329 of the Bankruptcy Code.

#### C. Arguments of the Parties

CitiMortgage argues that because the Plan provides for surrender of the Property, and because the Plan was confirmed, the bankruptcy estate's interest in the Property is extinguished and the Trustee has no standing to pursue the relief re-

quested in the Complaint. Further, according to CitiMortgage, even if the estate retains an interest in the property following its surrender, confirmation of a plan is res judicata as to all issues that could or should have been raised and litigated at the time of the confirmation hearing, and because the Trustee did not challenge the validity of its secured claim based on the Mortgage at the time of confirmation, he is now barred from attempting to reclassify a secured debt as unsecured.

For his part, the Trustee argues that the Property was never abandoned from the Debtors' bankruptcy estate—either directly by the Trustee or under the terms of the confirmed Plan. Because the Property remains property of the estate, the Trustee argues, he has standing to bring this action and is entitled to seek a determination by the Court that Mrs. Crum's one-half interest in the Property is not encumbered by CitiMortgage's lien.

**D. Res Judicata Effect of Confirmation, Judicial Estoppel and Post-confirmation Modification of Plan**

■ While the Trustee seeks a declaration that the Property remains property of the estate and thus subject to further administration, the Court concludes that the goal the Trustee/Debtors seek to achieve in this adversary proceeding would not be served by such a declaration. Because in order to alter the treatment of CitiMortgage's secured claim provided for under the confirmed Plan, the Trustee must first establish a basis for the Plan's modification. And as explained below, under the circumstances of this case, the doctrines of judicial estoppel and/or res judicata preclude the Debtors or the Trustee from modifying the Plan to change the treatment of CitiMortgage's secured claim.

■ Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). The Supreme Court has held that a confirmation order is enforceable and binding if affected parties had proper notice of the provisions of a plan and did not object or file a timely appeal. *United Student Aid Funds, Inc. v. Espinosa,* —— U.S. ——, 130 S.Ct. 1367, 1372, 176 L.Ed.2d 158 (2010). "[C]onfirmation of a plan has been described as 'res judicata of all issues that could or should have been litigated at the confirmation hearing.' " *Ruskin v. DaimlerChrysler Servs. N. Amer., L.L.C. (In re Adkins),* 425 F.3d, 296, 302 (6th Cir.2005) (quoting *In re Cameron,* 274 B.R. 457, 460 (Bankr.N.D.Tex. 2002)). "Although this provision typically is employed as a shield by a debtor to bar a creditor from taking action against the debtor in contravention of the terms of a confirmed plan, a debtor is equally bound by the confirmation order." *Woltman v. PNC Bank (In re Woltman),* 2008 WL 5157477, at *2 (Bankr.M.D.Pa.2008). "Once a plan is confirmed and a party in interest has had a reasonable opportunity to raise objections, a strong presumption of finality attaches to the order confirming the plan.... Although this presumption of finality is not absolute, a party seeking to undo a confirmed plan must have good reasons for doing so—reasons that outweigh the interest in finality. Good reasons are things like redressing fraud or other culpable conduct, correcting a failure to afford an interested party due process, or addressing an unexpected problem that arises during the life of the plan." *Ruhl v. HSBC Mortg. Servs, Inc.,* 399 B.R. 49, 58 (E.D.Wis.2008) (citations omitted). "This binding effect of confirmation has led courts to conclude that proceedings incon-

sistent or incompatible with the confirmed plan are improper." *Salt Creek Valley Bank v. Wellman (In re Wellman)*, 322 B.R. 298, 301 (6th Cir. BAP 2004).

▇ Despite the binding effect of a confirmation order, a debtor, a trustee, or the holder of an allowed unsecured claim may move to modify a plan post-confirmation. 11 U.S.C. § 1329. The modification may be to increase or reduce the amount of payments on claims of a particular class provided for by the plan, to extend or reduce the time for such payments, or to alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of the claim other than under the plan. 11 U.S.C. § 1329(a)(1), (2) and (3). Case law makes clear, however, that post-confirmation challenges to the validity of a secured claim are generally prohibited.

In *Mbazira v. Litton Loan Servicing, LLP (In re Mbazira)*, 2011 WL 3208033 (D.Mass.2011), a case factually similar to this adversary proceeding, a debtor's original and three subsequent modified plans provided for payment of Litton Loan's two mortgages. By way of a fourth modification, the debtor attempted to reclassify the first mortgage as unsecured based on a defective certificate of acknowledgment. The debtor also filed an adversary proceeding seeking a declaration that the mortgage was defective and that, as a result, the lien was invalid and avoidable. Holding that the debtor was precluded under principles of judicial estoppel and res judicata from challenging Litton's secured claim, the bankruptcy court dismissed the adversary proceeding. On appeal, the district court considered whether the bankruptcy court had properly applied the doctrine of judicial estoppel. The *Mbazira* court found that "[w]hile the contours of judicial estoppel are imprecise,

three conditions typically inform a court's application of the doctrine. First, a party's earlier and later positions must be inconsistent. Second, the party must have prevailed in convincing the court to adopt its earlier position. Third, the party urging the contrary position must stand to derive an unfair advantage from its about-face or impose [an] unfair detriment on the opposing party if the court accepts the new position." *Id.* at *3.

▇ As explained below, the three prerequisites for application of the judicial estoppel doctrine set forth in *Mbazira* are met here. The Court accordingly concludes that judicial estoppel bars the Trustee from pursuing an adversary proceeding to avoid the Mortgage and thereby modify the treatment of CitiMortgage's secured claim provided for under the confirmed Plan.

The first prong of the judicial estoppel test—the assertion of inconsistent positions—is established here. The Trustee's attempt to keep the Property in the estate is in direct contradiction to the confirmed Plan's provision calling for the surrender of the Property and permitting CitiMortgage either to (1) retain the Property in full satisfaction of its claim or (2) sell the Property, apply the sale proceeds to its secured claim and receive a distribution at the same dividend paid to general unsecured creditors on any deficiency claim. Prior to the filing of the foreclosure action, the Crums—by all indications—were keen to relinquish ownership of the Property to CitiMortgage. At the time the petition was filed, they did not reside in the residence located on the Property nor did they claim an exemption in the Property. They filed no objection to the secured claim of CitiMortgage. Their Plan called for surrender of the Property. They reiterated this intention in their response to the Stay Relief Motion. The presumptively defec-

tive Mortgage was on file, attached to Citi-Mortgage's proof of claim, some four months before the Plan was confirmed. Yet, the Plan made no mention of an avoidance action. The mandatory form plan in use in this division of the Court provides a space in section B(3) in which Debtors are to list any anticipated avoidance actions. The purpose of this section is to put secured creditors on notice that their liens may be subject to challenge. This section is blank in the Plan.

■ Moreover, had the Trustee believed that the Mortgage was avoidable, he would not have recommended confirmation of a plan calling for payment of a one-percent dividend to general unsecured creditors. Section 1325(a)(4) requires that in order to be confirmed, a plan must provide that "the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date," *i.e.,* a Chapter 13 plan must meet the best-interests-of-creditors test. 11 U.S.C. § 1325(a)(4). When reviewing plans for confirmation, the standing Chapter 13 trustee is charged with calculating the value of the non-exempt assets and disposable income available in the estate for payment, over time, to unsecured creditors. Part of this calculation is determining how much, if any, equity the Debtors may have in real property. Here, the Trustee determined that a zero-percent distribution to unsecured creditors met the best-interests-of-creditors test. See Estate Docs. 20 & 27.[7] He made this determination based, pre-sumably, on his review of the Debtors' non-exempt assets. This determination occurred some three months after documents revealing that the Mortgage was not properly executed were filed as an attachment to CitiMortgage's proof of claim and available for review by the Trustee and the Debtors.

■ In a decision addressing whether debtors have standing in Chapter 13 cases to bring avoidance actions, the Sixth Circuit Bankruptcy Appellate Panel ("BAP") noted that "[t]heoretically at least, the analysis of what would be distributed to unsecured creditors in a hypothetical Chapter 7 liquidation should assume, among other things, avoidance of preferences, fraudulent conveyances and unperfected liens. Otherwise, an unsecured creditor could argue that the bankruptcy court failed to use a truly hypothetical Chapter 7 liquidation as its benchmark. To meet the liquidation benchmark that assumes lien and transfer avoidance, a Chapter 13 debtor naturally must propose a plan of reorganization that contemplates the *actual* avoidance of such liens and transfers." *Countrywide Home Loans v. Dickson (In re Dickson),* 427 B.R. 399, 405 (6th Cir. BAP 2010), *aff'd,* 655 F.3d 585 (6th Cir.2011). Here, no avoidance action was contemplated at the time of confirmation. It was not until months after the confirmation order was entered, when CitiMortgage pointed out the error in the mortgage in its Foreclosure Complaint, that the Trustee asserted the inconsistent position that the estate retains an interest in the property.

The second prong of the test—that the party prevailed in convincing the court to

7. The Trustee's calculation of the dividend necessary to meet the best-interests-of-creditors test was originally set forth in the Trustee's objection to confirmation. (Doc. 20.) The objection was withdrawn, but the best interests calculation of zero percent was again set forth in the document filed by the Trustee withdrawing his objection to confirmation. (Doc. 2.)

adopt its earlier position—is met simply by the fact that the Court entered the confirmation order, thus approving the provision in the Plan calling for the surrender of the Property. Finally, adoption of the Trustee's arguments would result in a detriment to CitiMortgage by changing its status as a creditor secured by a mortgage on the entire Property to a creditor secured by a mortgage on only a one-half interest in the Property.

Thus, the summary judgment record establishes the existence of each element of the judicial estoppel test articulated by the court in *Mbazira*: the Debtors and the Trustee have taken inconsistent positions regarding surrender and retention of the Property; the provision in the Plan calling for surrender became effective by way of the Court's confirmation order, and Citi-Mortgage will suffer an unfair detriment by losing its secured status as to one-half of the Property should the Court accept the Trustee's new position. For these reasons, the Court finds that the Trustee is judicially estopped from asserting that the Property may now be administered for the benefit of creditors.

The Court acknowledges that Sixth Circuit law is not altogether clear on the question of whether the doctrine of judicial estoppel should be applied in situations that do not fall squarely within the tests set forth in *Eubanks v. CBSK Fin. Group, Inc.*, 385 F.3d 894 (6th Cir.2004). There, the court recognized judicial estoppel as an appropriate method of barring a debtor from pursuing a claim when there was an intentional concealment or failure to disclose the claim, but allowed the pursuit of the claim if the debtor's omission stemmed from a lack of knowledge or there was no motive for concealment. Neither *Eubanks* nor other Sixth Circuit precedent addresses the question of whether judicial estoppel should be applied under circumstances where, as here, a party changes its position based on newly acquired information, which through the exercise of diligence, was discoverable at a much earlier time— indeed at the time the party asserted its original position. While there has been no suggestion that the Debtors or Trustee concealed or intentionally failed to disclose the existence of the defect in the Mortgage on which the proposed avoidance action would be based, there is also no evidence in the summary judgment record establishing that they undertook the pre-confirmation document review and analysis that would have led to the timely discovery of the Mortgage defect.

 Even if the Court were to conclude that judicial estoppel should not be applied on these facts, application of the doctrine of res judicata leads to precisely the same result. There is ample case law supporting the proposition that a confirmed plan is res judicata as to all issues that were, or could have been, decided at the time of confirmation. In *Storey v. Pees (In re Storey)*, 392 B.R. 266 (6th Cir. BAP 2008), for example, the BAP ruled that § 1327 "precludes modification of a confirmed plan under § 1329 to address issues that were or could have been decided at the time the plan was originally confirmed," and quoted 8 *Collier on Bankruptcy* ¶ 1329.03 (15th ed. Rev. 2008) as supporting the principle that "[a] trustee . . . may not raise as grounds for modification under [§ 1329] facts that were known and could have been raised in the original confirmation proceedings, because the order of confirmation must be considered *res judicata* as to that set of circumstances." *Id.* at 272. Thus, the BAP held that "[t]he practical impact of this conclusion is that modification under § 1329(a) will be limited to matters that arise post-confirmation." *Id.* As explained above, the facts bearing on the extent of CitiMortgage's

lien were available to the Debtors and the Trustee prior to confirmation, and the issue of whether CitiMortgage has a lien on the entire Property could have, and should have, been raised then.

Other courts have reached the same conclusion when debtors have attempted to reclassify secured claims post-confirmation. *See Celli v. First Nat'l Bank of N. New York (In re Layo)*, 460 F.3d 289, 293, 295 (2d Cir.2006) (concluding that the confirmation order was *res judicata*, the court held that the trustee and debtor could not attempt to avoid a lien following confirmation and stated: "[T]he facts that form the basis for the Trustee's challenge to the mortgages were available in the county clerk's office for anyone to see.... [T]he Trustee had both a motive and opportunity to confirm the status of real estate liens affecting the debtor's estate at or before the time that the plan was confirmed.... This case ... involves an after-the-fact attack on a lien by a debtor who did not dispute the lien despite having notice and the opportunity to do so."); *Adair v. Sherman*, 230 F.3d 890, 893–95 (7th Cir.2000) (holding that debtor may not bring a post-confirmation collateral action objecting to a secured claim when proof of claim was filed prior to confirmation but no objection to claim was filed pre-confirmation); *Bubczyk v. MERS, Inc. (In re Bubczyk)*, 2012 WL 425332, at *2 (Bankr.M.D.Pa.2012) (holding that doctrine of *res judicata* barred debtors from seeking to revalue a lien securing a loan that they had committed to pay in full under the terms of their confirmed plan because "[d]ebtors' failure to accurately value their property when they filed their petition does not provide grounds to set aside the confirmation order"); *Charlick v. Cmty. Choice Credit Union (In re Charlick)*, 444 B.R. 762, 765 (Bankr.E.D.Mich.2011) (holding that failure to litigate the value of the property and attempt to strip lien pre-confirmation

cannot be remedied by a "post-confirmation second bite at the apple"); *In re Miller*, 428 B.R. 791, 798 (Bankr.S.D.Ohio 2010) ("The Sixth Circuit has analyzed modifications under this provision and concluded that § 1329(a) does not allow a debtor to modify a previously confirmed plan in order to 'alter, reduce or reclassify a previously allowed secured claim' but instead 'only affords the debtor a right to request alteration of the amount or timing of specific payments.' .... [O]nce a claim has been allowed as a secured claim and treated as such in a debtor's confirmed Chapter 13 plan, a debtor cannot subsequently modify the plan to reclassify the claim as unsecured." (quoting *Chrysler Fin. Corp. v. Nolan (In re Nolan)*, 232 F.3d 528, 532 (6th Cir.2000))); *Schmid v. Irwin Home Equity (In re Schmid)*, Adv. No. 07–3169, Doc. 20 (Bankr.S.D.Ohio 2008) (holding that debtor was barred from attempting to strip off junior lien based on post-confirmation appraisal reflecting lack of equity because plan made no reference to avoiding mortgage and creditor was given no notice at time of confirmation of debtor's intent to reclassify creditor's claim as unsecured); *In re Algee*, 142 B.R. 576, 582 (Bankr.D.C.1992) (ruling that the doctrine of *res judicata* precludes debtor from modifying plan post-confirmation to bifurcate secured creditor's claim after learning that the mortgage was secured by rental property as well as debtor's residence and stating that "all that has happened here is that the debtor—through new counsel—has finally 'smelt the coffee' and realized that he could have proposed a plan providing for practically nothing to be paid to [mortgagees] as secured creditors").

Because the Trustee may not modify this Plan under the circumstances presented here, the Court need not determine the question of whether the surrender of prop-

erty under a confirmed Chapter 13 plan is tantamount to—and thus has the same legal effect as—an abandonment of that property. Thus, both the Trustee's Motion and CitiMortgage's Motion are **DENIED** as moot. *See Finstad v. Florida, Dep't of Bus. & Prof'l Regulation,* 295 Fed.Appx. 352, 353 (11th Cir.2008) ("A complaint becomes moot when it no longer presents a 'live' controversy or a ruling on the issues would have no practical significance.") The Complaint is **DISMISSED.**

**IT IS SO ORDERED.**