16-2737, 16-2788
In Re: Lehman Brothers

**UNITED STATES COURT OF APPEALS**
**FOR THE SECOND CIRCUIT**

# SUMMARY ORDER

RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of July, two thousand seventeen.

PRESENT: DENNIS JACOBS,
         DEBRA ANN LIVINGSTON,
              Circuit Judges,
         GEORGE B. DANIELS,*
              District Judge.

- - - - - - - - - - - - - - - - - - - -X

IN RE: LEHMAN BROTHERS HOLDINGS INC.,
AND LEHMAN BROTHERS INC.,
         Debtors.

- - - - - - - - - - - - - - - - - - - -

1EE LLC,
         Plaintiff-Appellant,

         -v.-                                    16-2737

_____

* Judge George B. Daniels, of the United States District Court for the Southern District of New York, sitting by designation.

1

**JAMES W. GIDDENS, AS TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS INC.,**

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - - -

**WAYNE JUDKINS,**

Plaintiff-Appellant,

-v.- 16-2788

**JAMES W. GIDDENS, AS TRUSTEE FOR THE SIPA LIQUIDATION OF LEHMAN BROTHERS INC.,**

Defendant-Appellee.

- - - - - - - - - - - - - - - - - - - - -X

| | |
|---|---|
| **FOR APPELLANT 1EE LLC:** | DOUGLAS P. BAUMSTEIN, White & Case LLP, New York, NY. |
| **FOR APPELLANT WAYNE JUDKINS:** | GREGORY L. REID, Reid Rodriguez & Rouse LLP, New York, NY. |
| **FOR APPELLEE:** | JAMES C. FITZPATRICK (James B. Kobak, Jr., Gregory C. Farrell, Karen M. Chau, on the brief), Hughes Hubbard & Reed LLP, New York, NY. |

Appeal from a judgment of the United States District Court for the Southern District of New York (Schofield, J.).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED AND DECREED** that the judgment of the district court be **AFFIRMED** in part and **REVERSED** in part.

In these tandem appeals, which have been consolidated for decision, two former employees of Lehman Brothers Inc. ("LBI") -- Jonathan Hoffman (through his entity 1EE LLC) and Wayne

Judkins -- appeal from the judgment of the United States District Court for the Southern District of New York (Schofield, J.), which affirmed that part of the order of the Bankruptcy Court for the Southern District of New York (Chapman, J.) disallowing Judkins's claim and most of Hoffman's claim and which reversed that part of the order allowing a portion of Hoffman's claim. We assume the parties' familiarity with the underlying facts, the procedural history, and the issues presented for review.

On September 15, 2008, LBI's parent company, Lehman Brothers Holdings Inc. ("LBHI"), entered bankruptcy. The following day, LBHI, LBI, and LB 745 LLC (another Lehman entity) entered into an Asset Purchase Agreement ("APA") with Barclays Capital Inc. ("Barclays") pursuant to which Barclays purchased the bulk of LBI's North American capital markets and investment banking businesses. Under the APA, Barclays agreed to offer employment to former LBI employees who worked in the acquired businesses, and to accept certain compensation obligations with respect to those who accepted (referred to as "Transferred Employees"). Specifically, Article IX of the APA provided that Barclays "shall . . . pay each Transferred Employee an annual bonus ('08 Annual Bonuses'), in respect of the 2008 Fiscal Year that, in the aggregate, are equal in amount to 100 percent of the bonus pool amounts accrued in respect of amounts payable for incentive compensation (but not base salary)[.]" App'x at 1488. The APA further stated that "[s]uch 08 Annual Bonuses shall be awarded on or before March 15, 2009 in such forms and proportions as are consistent with [Barclays's] customary practices[.]" App'x at 1488.

After the bankruptcy court approved the APA, Barclays made employment offers to former LBI employees, including Hoffman and Judkins. Both individuals eventually accepted, and began working at Barclays in the fall of 2008.

Hoffman had been a remarkably successful trader at LBI whose compensation was governed by a series of annually negotiated contracts. In 2007 and 2008, his contracts provided for a base salary of $200,000 plus an annual bonus (payable in a combination of cash and equity awards) based on a percentage of net profit he generated: twelve percent of the first $25

3

million and fourteen percent of anything beyond that, less his base salary. His bonus each year was to be paid in two installments: 75 percent in cash and equity awards early the following year; the rest in cash early the year after that, subject to "clawback" if he lost money for LBI during the previous year.

The bankruptcy court calculated that, under these contracts with LBI, Hoffman was owed: (1) approximately $7.7 million in cash in early 2009 as the second installment of his 2007 bonus; (2) approximately $62.3 million in some combination (at LBI's discretion) of cash and equity awards in early 2009 as the first installment of his 2008 bonus; and (3) assuming he traded profitably in 2009, approximately $18.9 million in cash in early 2010 as the second installment of his 2008 bonus. Thus, the parties agree that when LBI entered liquidation, Hoffman was owed a total of approximately $83 million in bonuses.

Barclays's employment contract with Hoffman provides for payment (in cash and equity awards) of $83 million on top of the same general compensation package he had with LBI ($200,000 base salary plus twelve/fourteen percent bonus). Of the $83 million, $70 million was to be paid in three installments between February 2009 and February 2011, and $13 million was to be paid through increased performance incentives in 2009 and 2010. Hoffman ultimately received the $83 million, plus an additional $100 million in compensation for his trading performance at Barclays in 2008 to 2010.

Unlike Hoffman, Judkins's time at LBI was brief. He was hired as a trader in January 2008 under a contract that entitled him to an annual salary of $200,000 plus a minimum bonus of $800,000 (to be paid in early 2009 in a combination of cash and equity awards). He claims that his managers at LBI also orally promised to pay him a performance bonus.

When Barclays hired Judkins in October 2008, it agreed to pay him the same $200,000 base salary plus his guaranteed 2008 bonus of $800,000. Judkins received the $800,000 bonus, in cash, in February 2009.

4

In 2009, Hoffman (through 1EE LLC, an entity he formed for the purpose of asserting his bankruptcy claim) and Judkins both filed claims against the LBI estate for their bonuses. The Trustee for the liquidation of LBI objected. After a three-day merits hearing, the bankruptcy court found that Barclays ultimately paid appellants the full value of the outstanding bonuses they were owed. However, it concluded that because the $7.7 million paid to Hoffman for his 2007 bonus was outside the scope of the obligations delegated to Barclays under the APA, Hoffman could pursue a $7.7 million claim in the bankruptcy.

The district court affirmed in part and reversed in part. It ruled that, regardless of the scope of the delegation in the APA, appellants could not claim any part of their bonuses because they accepted payment of those bonuses from Barclays.

On appeal from the district court, we make an independent and plenary review of the bankruptcy court's decision. Celli v. First Nat'l Bank (In re Layo), 460 F.3d 289, 292 (2d Cir. 2006). We review conclusions of law de novo and findings of fact for clear error. Id.

**1.** Appellants contend that LBI still owes them their bonuses. We disagree, except with respect to Hoffman's $7.7 million bonus for 2007.

The bankruptcy court found that appellants and Barclays understood that Barclays would pay the bonuses LBI owed appellants. This factual finding is supported by the record -- including testimony by appellants and several other witnesses, numerous exhibits, and contract negotiations surreptitiously recorded by Hoffman. It is not clearly erroneous.[1]

---

[1] The bankruptcy court did not err by looking beyond the appellants' employment contracts for evidence of the parties' intent. Where, as here, contracts are silent on the issue, courts may consider extrinsic evidence. See Palmieri v. Allstate Ins. Co., 445 F.3d 179, 187 (2d Cir. 2006) (observing that "a court should . . . giv[e] due consideration to the surrounding circumstances and apparent purpose which the

5

It is undisputed that Barclays paid the $83 million and $800,000 that LBI owed Hoffman and Judkins, respectively. The entire payment to Judkins and all but $7.7 million of the payment to Hoffman were "08 Annual Bonuses" made to "Transferred Employees," App'x at 1488, and so were obligations delegated to Barclays under the APA.[2]  Although the *delegation* did not extinguish LBI's obligation to pay these bonuses, Barclays's *performance* (its payment of the bonuses) did.[3]  See Contemporary Mission, Inc. v. Famous Music Corp., 557 F.2d 918, 924 (2d Cir. 1977) ("[M]ost obligations can be delegated – as long as performance by the delegate will not vary materially from performance by the delegant. . . .  If the delegate fails to perform, the delegant remains liable."); Headrick v. Rockwell Int'l Corp., 24 F.3d 1272, 1278 (10th Cir. 1994) ("[I]f the delegate performs the duty, the duty is discharged, and obligor owes obligee nothing." (internal quotation marks omitted)).

The $7.7 million owed to Hoffman for his 2007 bonus is a different matter.  The bankruptcy court found that this amount lay outside the scope of the delegation in the APA (meaning Barclays had no obligation to pay it), and we find no error in that determination.  Relying on the law governing unjust enrichment, the Trustee contends that, although the APA has been understood not to cover 2007 bonuses, it would be inequitable to allow Hoffman's claim to the extent of his 2007 bonus in light of all Hoffman was paid under his agreement with Barclays.  But

_____

parties [to a contract] sought to accomplish" (internal quotation marks omitted)).

[2] Contrary to appellants' contention, section 365 of the Bankruptcy Code, which governs the assumption and assignment of executory contracts, did not prohibit LBI from delegating its bonus obligations.  It is undisputed that LBI did not assign, and Barclays did not assume, appellants' employment contracts.

[3] Hoffman emphasizes that the structure and timing of Barclays's payments varied from the terms of his contract with LBI. However, Hoffman agreed to these variations -- which, in any event, were, the bankruptcy court found, in this case not so material as to invalidate Barclays's performance -- and he received the entire amount owed to him.

Hoffman's employment agreement with Barclays required him to generate substantial profits for Barclays before earning the full amount promised under that agreement, and we therefore find nothing inequitable about allowing him to pursue his liquidated and unpaid 2007 bonus claim against LBI in bankruptcy. See Georgia Malone & Co., Inc. v. Rieder, 19 N.Y.3d 511, 516 (2012) ("An unjust enrichment claim is rooted in the equitable principle that a person shall not be allowed to enrich himself unjustly at the expense of another." (internal quotation marks omitted)); cf. Mathias v. Jacobs, 238 F.Supp.2d 556, 569 (S.D.N.Y. 2002) (explaining that the recovery sought by the plaintiff would amount to unjust enrichment because, under the plaintiff's theory of the case, "in exchange for no additional consideration other than [the plaintiff's] 'patience' in not pressing a $1 million debt, Jacobs bestowed upon him interests in securities . . . with a cash value exceeding $3.4 million and . . . still remains personally liable to [the plaintiff] for the full amount of the original debt[,]" or nearly $8 million).

2.    Judkins contends that Barclays was required to pay additional sums orally promised by his LBI managers. This argument fails because LBI's bonus policy made clear that employees had no entitlement to bonuses unless guaranteed in writing.[4]

3.    Hoffman asserts that LBI should be judicially estopped from arguing that Barclays satisfied LBI's 2008 bonus obligation to him because LBHI took a contrary position in prior litigation. However, judicial estoppel does not apply, because this contrary position was taken by LBHI rather than by LBI, and because it was not adopted by a court. See Adelphia Recovery Tr. v. HSBC Bank USA, Nat'l Ass'n (In re Adelphia Recovery Tr.), 634 F.3d 678, 695-96 (2d Cir. 2011) ("Typically,

---

[4] Because Judkins was not entitled to a bonus beyond the $800,000 guaranteed in his contract, his attempt to seek relief under the New York Labor Law is unavailing. See Tierney v. Capricorn Inv'rs, L.P., 189 A.D.2d 629, 632 (1st Dep't 1993) (holding that a "plaintiff cannot assert a statutory claim for wages under the Labor Law if he has no enforceable contractual right to those wages").

judicial estoppel will apply if: 1) a party's later position is clearly inconsistent with its earlier position; 2) the party's former position has been adopted in some way by the court in the earlier proceeding; and 3) the party asserting the two positions would derive an unfair advantage against the party seeking estoppel." (internal quotation marks omitted)).

Accordingly, and finding no merit in appellants' other arguments, we hereby **AFFIRM** the judgment of the district court with respect to the disallowance of Judkins's claim and Hoffman's claim for his 2008 LBI bonus, and **REVERSE** with respect to the disallowance of Hoffman's claim for his 2007 LBI bonus.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK